May it please the Court, I'm Josh Franklin appearing for Appellant Scripps Health along with my partner Cheryl Soto. I'd like to reserve six minutes for rebuttal please. I'll begin with the Condition Precedent Issue. The policy here at the very beginning, page ER 50, states that all conditions of coverage are defined and provided for in the policy. And throughout this policy, there are several examples of provisions cited in our brief that exemplify clear language creating conditions preceding of coverage. But didn't you also have a warranty statement that said that the CHUB application would be deemed to be attached to and made part of this policy? Absolutely, Your Honor. So that's part of it. And so then the question is, what do we make of the warranty that was in the CHUB application? And I will turn to that now, Your Honor. But as one example of the types of provisions in the existing policy, in the main policy, this is found at page ER 97. It states, and I'm paraphrasing, it is a condition proceeding to coverage for claims arising from underground storage tanks that the insured agrees to remain in compliance with certain specified protocols, including required maintenance. That is what a condition proceeding to coverage looks like in this policy. Well, they can come in a variety of shapes and sizes. So the fact that it's not the same word as used elsewhere isn't dispositive. So you have to address the language that the District Court found did constitute a warranty. Correct, Your Honor. And that language speaks to underwriting reliance. Even the Berkeley warranty statement, which is found at page 237, provides that the insurance company is relying on the information in the CHUB application, relying on the information in the CHUB application in deciding whether or not to issue a policy. It doesn't say anything about what happens to coverage after the policy is issued. And it doesn't say anything about any conditions of coverage. But it says the applicant acknowledges that the insurer's agreement to provide this coverage as part of the coverage applied for pursuant to this application is predicated upon the applicant's agreement to provide this warranty after describing the warrant that they'll strictly follow certain protocols. So that looks like a condition precedent. That's what the District Court concluded. We disagree, Your Honor, because the language states that the insurer's agreement to provide mold coverage as part of the policy is predicated on the insurer's agreement to make that warranty. But it doesn't say anything about what happens after the policy is issued. And just to put the... But by the argument, by the logic of this, what does this do? Allow the insurer to void the whole policy, but not to deny coverage? Your Honor, to the extent that there were misrepresentations made in the application or these statements were false when made, in other words, if Scripps did not have an intent to comply with its maintenance protocols, the Berkeley warranty statement acknowledges that it could result in the policy being voided, in other words, rescission pursuant to Insurance Code 447. And is that a higher standard than just denying coverage? It would rescind the entire policy, Your Honor, if there were misrepresentations made in the application. But everything in that CHUB application provides, it establishes underwriting reliance. I mean, there's a lot of findings by the District Court, which aren't appealed, that lay out a chronology in which your client was aware of the mold and knew about it due to defective maintenance, a lengthy set of documentary and testamentary record on that point. And so, even by the terms of your argument, would that not have provided a basis to void the policy altogether? It would, Your Honor, and that's an issue of fact that's not before the Court, and we'd also note that the vendor who allegedly performed mold remediation testified in a 30B6 deposition that they did nothing other than routine maintenance and never performed mold remediation during the dates that they performed work for Scripps. So that is a fact issue that will be decided if this Court remands. What cases would you point us to that would say that language like this does not bias to the level of a condition proceeding? Number one, Your Honor, is the California Supreme Court's decision in O'Connor, which tells us that use of the word warranty is not conclusive as to the establishment of a condition proceeding to coverage. Instead, the entire contract as a whole needs to be considered in context consistent with Civil Code Section 1641. This would include the Chubb application itself, the Berkeley warranty statement, and the main policy form. So, Counsel, would you go back to the provision, the Chubb provision that Judge Collins quoted to you? Because I'm not sure I understand what you think that warranty does. So, there's a warrant, the applicant warrants to the assurance that the other parties will strictly follow. So, it's just a promise to do something in the future, but there's nothing that turns on it? Is that your contention? It is a statement that establishes underwriting reliance. If I were to tell a life insurance company in an application, I have no plans to go skydiving in the next two years, but a year from now, I'm inspired to jump out of a plane that doesn't give the insurer a basis for denying coverage unless it expressly conditions coverage on me not doing that. Now, if it turns out that I had actually booked a reservation to jump out of a plane two weeks before submitting the application, the insurer would have a basis for receiving it. Because there was some kind of fraud at the time that it was signed. Correct. So, the fact that the hospital thought that it would strictly follow these protocols, even though it was ultimately unable or unwilling to do so, doesn't matter because it had good intentions at the time it signed this policy. Yes, Your Honor. And Nautilus could easily have established a condition proceeding to coverage as it did throughout the policy, including the provision I referenced to the court. And so, the provision at the end that says that, you know, this application is predicated upon the applicant's agreement, it just simply just reinforces that you're making good promises to be a good citizen in the future. In other words, Your Honor, the insurance company is saying, we're comfortable based on your stated intent of performing this maintenance on your facilities, which are dozens of facilities, we're comfortable issuing mold coverage as part of the policy. There is other language that establishes clear forfeiture language, including just above that language, Your Honor, in response to a question about prior known health concerns, which makes clear that coverage will be forfeited for claims arising out of any prior known health concern. The cases relied on by the district court and Nautilus support the argument that this language is not sufficient to apprise the insured of a condition proceeding to coverage. Cases like McKenzie and Trish and Air established clear conditions to coverage. One or more watchmen shall be on duty or this policy shall be null and void. It is required that pilots complete certain specified training with a corresponding exclusion apprising the insured that coverage will be forfeited if they don't comply. The American Way Cellular case and Mama K's Diner involved very similar policies that expressly condition coverage on maintaining operating sprinkler systems. Keep in mind, these are very discrete tasks that are defined and yet the policy language is so much more clear in terms of establishing a condition proceeding to coverage. In contrast here, just to make sure the court understands the magnitude of the undertaking in terms of the performance of these maintenance tasks, there are pages ER 240 through 325. That's 80 pages, which is just one of numerous documents that were submitted during the underwriting process. And those documents are identified at pages ER 94 and 95. I guess what you're suggesting is there could be some tactical violation of one of these many requirements that would then unravel the coverage and perhaps that might be unreasonable. But what about here where there seems to be findings by the district court of large-scale failure to deal with a known mold problem over a period of years, and not just simply technical noncompliance, but rather more substantial noncompliance? I'd like to use some additional time, please, two minutes. That's a great point, Your Honor. The fact that here there seems to be a correlation doesn't change the fact that a failure to perform maintenance on a decorative fountain at one facility, one week's worth of maintenance there could forfeit coverage for the entire policy, which covers locations that are found at pages 86 through 92. There are dozens of facilities that are covered by this policy, and yet under Nautilus's position, there's a summary of these tasks at ER 301, they're saying if there's not strict compliance with every one of these maintenance tasks covering dozens of facilities that Scripps would forfeit all coverage. If you're going to have that massive of a consequence and have coverage conditions... I'm looking at like the language from the Chase case, which is cited, it says a statement in an insurance policy, importing an intention to do or not to do a thing which materially affects the risk is a warranty that such act or admission will take place. Generally speaking, compliance with the terms of a warranty is a condition precedent to a right of recovery. That seems, that language seems to be a problem for you. Generally speaking, Your Honor, it does not establish that a warranty is always a condition precedent. And keep in mind that we're evaluating this defense as a covered, as a condition precedent defense, which was Nautilus's 13th affirmative defense. So we have to look at whether this clearly establishes a condition precedent to coverage, not whether it just uses the word warranty. And again, they had an opportunity through the Berkeley warranty statement to establish that compliance with those maintenance protocols were a condition of coverage. They did not do so. They only underscored that this was underwriting. Okay. Do you want to save the rest of your time for rebuttal? Please, Your Honor. Thank you. Thank you, Counselor. We will hear now from Ms. Moorhead. You may proceed when you're ready. Thank you, Your Honor. May it please the Court. Bridget Moorhead with Selman, Leichtinger, and Edson on behalf of Defendant Appellee Nautilus Insurance Company. For over 100 years in California, their courts have consistently enforced warranties that include a statement of intention to do or not do something material to the risk as a condition precedent to coverage. In this case, this is what we are looking at. And the focus should be on the language as Your Honors have focused on. The cases go from McKenzie by the California Supreme Court in the early 1900s all the way to Mama K's Diner in 2023. Courts both the California Supreme Court- He argues, you could have put in an extra sentence that said, and if you fail to follow these protocols, then you have no coverage then. That is specifically addressed by the California Insurance Code in Section 448, which in the briefing scripts has completely ignored. So if there's- if it's material, you don't need additional language because the warranty is clear that it's predicated upon in this particular- it's conditional language. 448 states, unless the policy declares that a violation of specified provisions thereof shall avoid it, the breach of an immaterial provision does not avoid the policy. So the insurance code is clear that if it's material to the risk, then the warranty applies as a condition precedent. If it's immaterial to the risk, then in that case, you do need specific language that coverage would be voided. So in this particular language, it is very clear that the strictly following their protocols, their maintenance protocols to prevent mold in their HVAC system is predicated upon their compliance with that. So the warranty- and we have several examples of cases where they don't identify it as a warranty, but there's still language that says that it's predicated on or it's conditioned by or it's subject to or provided by. In particular cases such as Navigator Specialty Insurance, there was an independent contractor warranty. There was no specific language that it was conditioned on that. All you need is the statement that those contractors and subcontractors under that policy had to obtain general liability insurance, and they had to name the general contractor as an additional insured. Those were the representations that were made, and there was- that was a condition precedent to coverage. When there was no proof of that, there was no coverage. And I wanted to add, directed him, this is very specific to mold coverage. Nautilus has not taken the position that this policy would be void. We're not dealing with misrepresentation here, and it could very well be because as they provided all of these documents, pages and pages, and I would direct the court to the policy in ER094, which lists all of the documents that Scripps Health provided to Nautilus, leading them to believe that they were following all these protocols. And we're also not dealing with a myriad of the 3,000 or over 1,000. There were just a few pages in the water utilities manual that dealt with their HVAC system. They only had to comply with the HVAC protocols, and that was primarily inspection, monthly, every six months, annual, quarterly inspections. There were 40 AHUs, air handling units. Those were all of the AHUs at Scripps Green Hospital. Every single one of them had mold. There was no incident. There was no mechanical failure. There was no water leak. There was nothing that happened. When you have mold in all 40 of your AHUs, they have not been maintained. I mean, that's one thing that Scripps is not challenging here, is the numerous factual findings that it colossally failed in its preventative, you know, controls, all of its things that it did on an annual basis to actually prevent mold. So we're not arguing here that the policy is void. We're arguing that the claim, which was a claim for millions of dollars of mold remediation, is that they're entitled to under the policy. And this warranty is so specific. I mean, when you look at it, it has the predicated language that your honors pointed out, but it also lists specific any water intrusion, mold-related, fungi-related, or bacteria-related due diligence procedures or protocols. And then as your honors pointed out, that the coverage, which is mold coverage, it says the insurer's agreement to provide mold, fungi, and or Legionella pneumophila coverage as part of this coverage is predicated on the applicant's warranty. Scripps Health has not pointed to any word in that warranty. And, you know, you read that sentence. These protocols, it says, have to be provided to the insurer prior to the inception of any coverage. So there has to be a documentation of what the protocols will be. That's absolutely right. And that was, in your view, because of the document you referenced earlier? Yes, that was in the policy. I mean, that goes to show, I mean, Scripps has raised the issue of intent, like Nautilus intent. I mean, I think there's no question that Scripps had the intent. This isn't a warranty that was drafted by Nautilus. This is a warranty that was submitted by Scripps. It's their warranty. And they provided it. Nobody forced them to provide it. And then after they provided the CHUV application, they then signed a warranty that the CHUV application would be incorporated. And then the policy also has specific language that says that everything, not just the application, but the warranty statement and every single document they provided in the underwriting submission showing their protocols were all incorporated into the policy. Is this a standard? I know this isn't your client's insurance agreement, but is this also a standard provision in the agreements that your client uses? Is that in the record? That is in the record. That if this statement is not in the Berkeley application, but on the record, we gave them an opportunity to submit the Berkeley application and they were given an extra 30 days if they wanted to do that. And they chose not to. So in our view, that warranty statement basically embraces on both sides, embraces the CHUV application and all of the statements made therein. If you didn't have this warranty provision from the CHUV application, was there any other warranty provision in your client's agreement or elsewhere in the agreement that would have provided a basis for denying coverage? Well, that's a broad question, Your Honor. I think there are other basis for denying questions. I'm asking specifically about a warranty provision. Yes, there is not a warranty provision in the Berkeley application, but the Berkeley application is not part of this policy. And so the court would look to the language of what is part of this policy, which includes the CHUV application. I would also add to the, although warranties are very specific in insurance policies, this is not, you know, this is not unusual. It's exactly, it's like any other contract where one party makes specific promises as a condition to any performance by the other contracting party. So to hold otherwise would be for the court to declare that these parties are not bound by the insurance contract. And we know from all the language that all of these documents are part of the insurance contract. Mr. Franklin raised the argument that on your reading of the contract, even a very small failure to manage the mold, like in one fountain, could provide the basis for denying a broad range of coverage. How do you respond to that? Well, first of all, I respond to what's in the warranty where Scripps warrants to strictly follow. That's their language. And then intuition, which is with the Ninth Circuit Court of Appeals, also said that it had to be strict compliance. All of the cases coming down after McKenzie have found that it has to be strict compliance. I think it is disingenuous for them to argue that when they had no compliance. They don't even touch this issue because they know that they can't win on that. There's just, I mean, the non-compliance was- Even if it's, in your view, even if it's substantial compliance rather than strict compliance, it wouldn't make a difference on the facts of this case. I think on the fact, yes, it has to be strict compliance. The case law is clear on that. I understand your legal position, but I'm trying to understand your argument. As I understand your view of the facts, even if the standard were not strict compliance, you would still prevail on the facts of this case because this wasn't a trivial failure to maintain one unit. This was a systematic failure to do anything. That's correct, Your Honor. It was systematic so that it affected all 40 air handling units. And this was something that had been going on both before the policy was issued and after the policy was issued, which we really didn't know, Nautilus didn't really know about until we got into discovery in this case. I also wanted to add too, because there's been some discussion about O'Connor. And we briefed that thoroughly on, I believe, page 34 to 36 of our brief. But the O'Connor case is an early case that deals with life insurance. And the warranty in that is a warranty of truthfulness, which is pretty typical in a life insurance case. That is not the same. It's factually distinguishable. And then the other issue was, is there was another document in addition to the policy that changed the whole reading of O'Connor. So our feeling is that O'Connor is just not factually or legally the same as this particular case. And really, Scripps Health has not come up with any other case that is not consistent with all of the cases that are in California. McKinsey, Trishann, Mama K Diners, there's a whole series of cases that have looked at conditions precedent to coverage that are stated clearly, either in the policy or in an application. So we don't see any basis. There are no cases that dispute those cases. And Scripps has not, other than O'Connor, has not really provided any case that would apply to the facts of this case. How do you read the second portion of the district court's ruling on late notice? Do you view that as being a completely alternative ground for summary judgment or an alternative ground for partial summary judgment in the event that the main ground for full summary judgment were to be reversed? The court very clearly stated that late notice, that there was an issue with the late notice, that it could not grant summary judgment. I know it went on to talk about the 10-day emergency notice, but I don't believe that was supporting. If you look at the language in the decision, I don't believe that that was a basis for summary judgment. You don't view that as an alternative for a full summary judgment? No. Okay. No. And I know that didn't come up in their oral argument, but it... So the judgment in this case rests on the warranty issue and the warranty issue alone? Yes, it does, Your Honor. Okay. I just wanted to add in closing that this matter must be reviewed through the lens of the extensive factual history of Scripps' noncompliance with this HVAC maintenance protocols, both before and after it submitted its application for insurance, which Scripps would like you to ignore. And Scripps' argument that we've talked about before, that strict compliance is not required, is disingenuous when there was no compliance. Scripps' characterization of its maintenance protocols are consisting of thousands. Maintenance task is duplicitous when the task consisted primarily of monthly, quarterly, and annual inspections that they just didn't do. And I would say that just because there's no warranty written exactly like the Scripps warranty in many California legal authorities that enforce warranties as conditions present, it is not a basis for rejecting the Scripps warranty as a condition precedent to mold coverage. The language of the Scripps warranty alone establishes a condition precedent to mold coverage. Thank you. All right. Thank you, Counsel. We will hear the rebuttal now. Thank you, Your Honor. The references to the insurance code in 448 speak to warranty language. Again, it doesn't establish that there's a condition precedent to coverage. There still needs to be clear language in the policy establishing that. We respectfully disagree about O'Connor. We think that the misrepresentation, albeit not intentional, of an existing fact weighs even stronger in favor of finding a condition precedent in O'Connor. Here, we have a far broader undertaking in the future. The Chase case that was referenced by Judge Collins involved waiver. Whether a warranty was wavered, the existence of a condition precedent to coverage was not disputed. The case navigators that Counsel referenced in her argument had a clear provision that the insurer had no duty to defend or indemnify if the subcontractors had not exhausted the insurance that was found to be a condition precedent to coverage. I'd also ask the Court to consider the fact that extrinsic evidence here can be considered, even in connection with facially unambiguous language, to show that there is another interpretation. And here, the extrinsic evidence weighs heavily against construing this as a condition precedent to coverage. This is cited in our briefs. The lead underwriter who decided to accept the Berkeley warrant or the Chubb application never even reviewed it. There was no discussion during underwriting. This came out during a deposition. No discussion that suggested the language in the Chubb statement was noticed, let alone relied on in deciding to issue coverage or creating a condition precedent to coverage. There's nothing in the claim file that suggests any review of a warranty or condition precedent to coverage or Scripps failure to comply with its maintenance protocols. And in discovery, Nautilus was asked to provide all the reasons in support of their defense that there are no policy benefits owed. And they have a five-page response found at pages 380 through 385. And in there, the Court will see no reference to any warranty, no reference to any condition precedent, and no reference to Scripps failure to strictly comply with its maintenance protocols. Turning quickly to the notice prejudice rule, the seminal case is Pitzer, cited in our brief, which notably was decided after all of the cases relied on by the District Court and Nautilus, which tells us that to the extent some of the cases relied on by Nautilus and the District Court may have predicted that the California Supreme Court would never, under any circumstances, apply the notice prejudice rule to a claims made and reported policy, that prediction was incorrect. And the policy language that the Court distinguished Pitzer on the ground that it was an occurrence policy, which is simply not true, at page 109 of the Pitzer opinion, it quotes the relevant policy language, which makes clear that that policy was a claims made and reported policy, just like the policy here. So, on remand, we would ask the Court, first, we would ask the Court to reverse the District Court's ruling as to the condition precedent issue, and on remand, direct the District Court that the notice prejudice rule must be applied to any evaluation of whether Scripps provided notice as soon as practicable. Thank you. All right. Thank you, counsel. The case just argued will be submitted.
judges: BYBEE, COLLINS, BRESS